And the final matter is a guy which is a warden. Good morning, Your Honors. May it please the court, Paul Kern Kingsbury, the Decker LLP, the appellant Nakai Gai, I respectfully request that the defendant's name be called. Mr. Gai is effectively serving an additional two years on his sentences. Well, why is that? Because it looks like, and correct me if I'm wrong here, and I invite Ms. Bowden here to say it, it looks like what happened here is that the state trial judge inarticulately used the term parole. And that gave rise to a whole host of arguments here that are being made based upon primary jurisdiction. But he served his state time. The state authorities realized that, well, the state judge wanted this time to be concurrent with the federal time. That's not happening, so why don't we knock something off of the state time. That was done. The end result is that the sentence that he served is roughly, and it's easier for me to say that because I'm going home at night, I'm not going back to the cell, it's roughly equivalent to what he would have served had the state time actually had run concurrent with all of Judge Batt's sentence. What's wrong with that? It's actually two years longer, Your Honor, because under the ten-year sentence, Mr. Gai would have received one year for prior state custody and additional time for good behavior while he was in state custody. Nothing the state judge has said impacts on a federal sentence. The cases you rely on are Smith in the Ninth Circuit, Croft, that is the Sixth Circuit case that I referred to in the last oral argument, and Kendra from the Second Circuit. And they basically say that where a federal judicial officer has commanded federal agents to take an individual into custody, then you have a ministerial duty to execute that order. Judge Batt's made it very clear that she was not commanding that the officers before the state judge in 2007 take Mr. Gai into custody. Your Honor, I respectfully disagree with that. In October of 2006, Judge Batt's ordered the federal agents to take Mr. Gai into custody. She also issued an arrest warrant. And the defendant is remanded to federal custody upon his release from Rikers Island. He was never released from Rikers Island until 2013, right? No, Your Honor. Rikers Island is primarily a pretrial detention facility, so he was released from Rikers Island and placed in Greenhaven Correctional Facility. But wait, this case went back before Judge Batt's for clarification. What did she say? Judge Batt's recommended that the BOP not grant Mr. Gai's pardon request, but that was just a recommendation. And at that point in time, the federal sentence had already completed, in fact. That hurts you. The federal judge doesn't have any more authority than to recommend something to the BOP, which the BOP can, at that time, if they want, can say to the judge, go pound sand, we're not going to do it. How can a state judge's very unearthly use of the term parole have an effect on the BOP? When the state judge is not part of the executive. Your Honor, the state judge's order did not require the federal agents to take Mr. Gai into custody. It was the presence of Judge Batt's clear order that Mr. Gai be taken into federal custody that created their obligation to do so. The state court, and with the agreement of the district attorney, I might add, agreed that Mr. Gai could go into federal custody in recognition of the pre-existing federal sentence. So Judge Batt's, as of September of 2007, the only clear record evidence is that she had directed the marshals to take Mr. Gai into custody. It's only in 2013 that Judge Batt's makes that recommendation. At that point, under our theory of the case and under the clearly established law, the federal sentence had already run because it had finished in April of 2012. The BOP could have adjusted that, and you tried that. The state sentence was reduced, right? The state sentence was reduced from 10 to 7 years, and he was immediately released into federal custody. The sad reality is that had he gone back to the state court earlier, he wouldn't end up serving the two extra years. Actually, Your Honor, it's entirely possible that he would have, because the state judge might not have been able to give him any less time based on the record before it. So the fact is that Mr. Gai, when he was released, it was right actually around the time. If he's doing the minimum allowed by state law, and he's doing precisely what the federal judge, Judge Batt's, wanted him to do, all of a sudden you've lost the equity. I thought you had some equities in this case, but now you may have lost the equities. If he's doing precisely the time that both the state and federal judges require, need him to do. But that judge, Mr. Peagod, is way back in the sheet, in the back of his medicine. No, Your Honor, but I do think, to clarify one point, the state court and the district attorney promised Mr. Gai, as a condition of his guilty plea, that he would be turned over into federal custody. So the state court never intended that Mr. Gai would serve. Well, they promised him something they couldn't deliver, I guess, then. What's the promise? Is that by saying that I'm paroling you to the federal authorities who are here in court? Is that the promise? No, the promise was made in August when the plea agreement was entered into, but it was also stated on the record, it was repeated on the record by the state court that a promise had been made. So that's clear that the district attorney and the state court promised that Mr. Gai would, rather than first serving a state sentence, be given over to federal custody in recognition of the preexisting federal sentence. But does the state of New York, the state system, have the power to dictate the extent and beginning and end point of a federal sentence? No, Your Honor, but Judge Patz had the authority, and she had directed the marshals to take Mr. Gai into custody, and they refused to do so. And later on, when she was asked to leave? Well, that was before. I mean, then he got released on bond. That's what got him in trouble. He screwed up after he was released on bond. He did. That's true. But that seemed to influence why Judge Patz wasn't, after she did him the honor of releasing him, that seems to be why she didn't look very kindly on the request that was later presented to her, right? That point is well taken, Your Honor, but the problem is that the district court construed Judge Patz's recommendation, is giving precedence to Judge Patz's recommendation over the state court's clear order, and it's only by amending the statute. The state court's clear order was what? Was that Mr. Gai was to be released into the custody of present federal agents. And under the Supremacy Clause, state judges have the power to order federal marshals to take people into custody? No, Your Honor. And order the BOP to put them in a federal penitentiary? No, but that's not our position. So then it's an order of no legal import, then? As of September 11, 2007, the marshals had an order to take Mr. Gai into custody. But he wasn't, upon his release, but he wasn't released that day. Upon his release from Rikers Island. From state custody. This is where we get into that strange doctrine of primary jurisdiction, right? How did the state system, whether it was Rikers Island or the other place you mentioned, I mean. . . When did the federal government have primary custody of him prior to 2013? September 11, 2007. Primary custody? Yes, Your Honor. At that point. But then he was released, and then he got arrested. No, excuse me. He had. . . It's undisputed that the federal government had primary custody over Mr. Gai up until October in 2006 when he was released on bond by Judge Batts. Our position is that he was effectively in primary custody of the federal government in September of 2007 because the only reason that he wasn't actually in federal custody was that the marshals ignored Judge Batts' order to take him into custody. And there's no evidence that existed as of. . . Why was that order still efficacious? I've wrestled with this. I don't understand why that initial order of Judge Batts was still efficacious after so many other things had happened, including his release on bond, his re-arrest, and his appearance in a state court of law. Well, Judge Batts' order to take Mr. Gai into custody was after he had been apprehended on the state charges. So with cognizance of. . . That was October 11? Excuse me, Your Honor. That was October 11, her order? Yes, on October 11, 2006, Mr. Gai had been arrested on the state charges that he was eventually sentenced to 10 years for, and then that was dropped down to seven. But at that time, Judge Batts had ordered the marshals to take him into custody. That's the only order on the record. There are no intervening circumstances from a federal standpoint that would change that. I thought what happened, and I know you're having a tough time here because we can't. . . I don't think you've gotten a sentence completed since you started, but you're doing okay with it. I thought what happened was that on October 11, she revoked the bill and remanded him to federal custody upon the release from Rikers Island. Is that what happened? Those are the exact precise terms of the order that she issued on October 11, 2007. So he's still in federal custody, and then he's supposed to go to Rikers when he finishes the federal sentence. He would have gone into state custody. He would have been placed into a state correctional facility, not Rikers Island, if he had more than one year left on his sentence. There is an administrative path for your client to have gotten what he wanted, and that's called a barden petition. Yes, Your Honor. And that was availed of, and it was denied by Judge Batts. Isn't that game set in match? The barden request was not denied by Judge Batts. It might be a formality, but I think it's important to remember that Judge Batts didn't have jurisdiction to determine the barden request absolutely one way or the other. But Judge Batts did recommend against it after Mr. Guy's sentence had already run. So BOP, Bureau of Prison's ultimate decision, who made the decision? BOP made the decision. But the fact that Mr. Guy has other forms of relief available, forms that he pursued prior to bringing the habeas corpus petition, shouldn't preclude relief under the habeas corpus petition. If his sentence commenced, as is our position, on September 11, 2007, then it ran and expired in April of 2012. So anything that happened after that is essentially irrelevant. It's illegal custody that is ongoing. Could your client have appealed the denial of the barden petition? No, Your Honor. He couldn't have appealed the denial of the barden petition. So there is no appeal once BOP makes that decision? There is an appeal process within the BOP, but Mr. Guy did actually pursue an administrative remedy once he was in federal custody. Did he pursue? In other words, once BOP made a decision that the barden petition, which usually are not granted, if you wish to go up the ladder after that, where do you go? Or is there nowhere to go? Your Honor, actually my understanding is that once the BOP has granted or denied the barden request, there was no further avenue of relief. I know there's a general availability of administrative remedies within the BOP. But I do think the most important point is that Mr. Guy did attempt to give the government an opportunity to correct the wrong, and their consistent denial to do so is what necessitated the habeas petition. It would have seemed that, because you had a prosecutor come in in 2013 at the state level and say, you know, what he's saying is really what I intended in 2007 with regard to what was going to happen here. Why wasn't that prosecutor brought in at the time of the barden petition rather than many years later? Well, I can only assume, Your Honor, it's because the barden petition wouldn't have hinged on the state court's intent once Judge Batts had recommended against. Well, I mean, but the idea of the whole thing is comedy here between federal and state. And if the state says, hey, we really didn't mean that, we were thinking that some of his federal time would, in effect, be concurrently served in state prison, that would seem to have helped. I don't know why that person wasn't brought to the fore back when the barden petition was made. Your Honor, I can't speculate as to why that particular person was brought in for the barden request, but the state court's intent and the agreement between the DA's office and the state court that Mr. Guy would be released into federal custody, that was clear on the record. So why particular evidence was not communicated at that point, I'm just not sure. It didn't happen. The judicial officers or the officers, the enforcement officers that were there on September 11, 2007, did not take him away, and now it's later, and you're asking yourself why, and you're trying to get communication between federal and state officials. It would have seemed, at the time of the barden petition, the best time, the optimal time, in order to bring this prosecutor forward saying, hey, here's what we intended. And then you might have saved yourself the two years that you got from the softball from Judge Hardiman. Actually, the two years is problematic simply because the state court, in resentencing Mr. Guy and vacating his conviction, gave him the minimum that he could. It would not have saved a significant amount of time. At that point, the state court's hands were tied, so no amount of this delay issue is a red herring. At the end of the day, it would not have, the delay cannot be ascribed to Mr. Guy. Then the problem is all this is occurring, as I said, after his federal sentence had expired. But the state court would not have been able to release Mr. Guy two years before it did, even if Mr. Guy In terms of time served, then, just tell me what was the harm then? How much additional time was served by not being paroled on September 11, 2007? Two years. Well, given the BOP's current release date of April 2017, Mr. Guy will have effectively had his sentence extended by two years. If you take cognizance of the state and the federal sentence combined, the term would have run for that long. Okay. What if the state court had not gotten into this whole thing about pulling the federal custody to take him away, but he or she had simply imposed the sentence and said, I want this to run concurrently with any federal sentence. Wouldn't it be the same situation? No, if he hadn't actually had released Mr. Guy. Don't say that, because there's an issue about whether or not he released him. Well, the issue is whether the marshals took him. Was it a he? Excuse me, are you? Yes. Let's assume the state judge just imposed the sentence, and he didn't say anything else, just imposed the sentence and made it concurrent with the federal sentence, nothing about paroling. Wouldn't we be in the same situation? No, Your Honor, we wouldn't be in the same situation because the federal sentence would not have begun to run merely by the judge ordering it to do so. It's only the confluence of Judge Fatt's existing order that the marshals take Mr. Guy into custody that triggers the rule in Kendra and Swope and created an obligation for the marshals to take him into custody. That's critical here. And if the state hadn't – when considering the state, you need to consider both the court and the district attorney's office. Under my scenario, though, the guy goes back into Green – he goes back to Green Haven, but he goes back to Green Haven knowing that the time in Green Haven is going to be served concurrently with any federal sentence. How would that be different? He still is going to hold the federal government sometime when he gets out of Green Haven, isn't he? That's correct. I mean, then the problem would not lie with the DOP's current detention. Then there would be an issue of Mr. Guy against the state of New York where he would be claiming that his continued detention by that state was unlawful. So I'm wondering what mechanism in New York allows a judge to basically stay in the position of the state sentence? Because if you're right about him starting the federal clock ticking when he used the term parole under federal custody, what the judge is basically doing is staying in position of the sentence. I don't know the way sentencing laws work in New York. In Pennsylvania, there would be absolutely no mechanism to do that unless the court gave what's called a county sentence, two years or less on the maximum, and then immediately you could then parole the person because the judge has that parole authority, which I certainly don't have in New York. But it seems to me there's simply no authority under the sentencing law of New York to allow the state judge to accomplish what he's suggesting he accomplished by telling the federal marshals to take him into custody. Well, I'll say the state court thought it had the authority to do so. The district attorney thought that the state court had the authority to do so. And absent an express statute preventing the state of New York from the state court from having that authority, the presumption is on the other side that the state court has jurisdiction to enter orders to give effect to its plea negotiations. I can't control the federal sentence. The only way this could have worked for your client is if Justice Fitzgerald had postponed sentencing. Let the feds go first, and I'll see how much time the federal judge gives him, and then that will inform me as to what I do on my end. Exactly. I don't agree with that because, well, the important point is that the state court released Mr. Guy. He wasn't free to walk out that court. He couldn't walk out that courthouse door and go down Main Street. That's an excellent point. But if the court had released Mr. Guy, for example, by granting bail pending appeal, which a state court is authorized to do in New York, and released Mr. Guy into the street, the marshals would have then arrested him, of course, and he would have been taken into custody. So the argument would have carried out toward his federal sentence. Right. And similarly, if the state court judge had even incarcerated him without bond pending sentencing on the state charge, then whatever sentence Justice Fitzgerald ultimately imposed, he could have credited that against the state sentence. I don't think Justice Fitzgerald could have made that determination. But what he did here, the government's position here is essentially saying that because Mr. Guy was, because the state had ordered him released in a courtroom instead of immediately outside, that there was no commencement of the sentence, and that's just an absurd result. It turns on a technical formality rather than looking at the substance of what the state court was really trying to accomplish. Just one final question. What Justice Fitzgerald said in New York was, and I'm informed that the federal authorities are here in court, I will parole the defendant into federal custody so they can take him back over there so they can do the report. I don't know what that means. Do the PSR. And so first question is, how does a judge determine parole, which is normally done by the prison authorities, the executive department, and here the federal officials that were in court, they don't really know if they're under any kind of order that they must, and remember it has to be a federal judge giving the order, that they must take this person. Your Honor, they had an arrest warrant. They had an order from Judge Batts to take him into custody as soon as he was released from state custody, and I know that's not the express terms. The term parole here is an artful, I think. I think the later proceeding illuminates what the state court was intending to do, and said parole, used that term in the sense of release, but in any case the intent was to order his release, and that's clear from the plea agreement. I'm not sure it's that even accurate. This is about so they can do the report. He didn't say so, and the judge didn't even have the authority to say, so he could have said so he can start serving his federal sentence. Well, actually, in a way he did. He said, I made you a promise, and the promise that he referred to, that's just a paragraph before the order, the promise he was referring to was, we will, in recognition of the preexisting federal sentence, we will cede jurisdiction to the federal authorities and let you serve the federal sentence. Then he should have been sent to a federal penitentiary. I agree. Well, the marshal should have taken him into custody at that time. Because the state judge ordered them to do so. No, because the federal judge had ordered them to do so. Well, that's the key. The federal judge says the defendant is remanded to federal custody upon his release from workers. That was October 11th. 2006, the year before, not immediately after. Exactly. So, I mean, you really need to go back to Judge Bassett and get a clarification or go back to him. She clarified it against you. Well, she clarified it. Her recommendation to be obeyed. She clarified it without an explanation why she recommended it against the grant or the pardon request. That does not illuminate what she intended when she issued an arrest warrant. Sure, it does. Because if what she intended there was that his time would be shortened, and she had the power to do that when the pardon request was put to her. Or at least the power to recommend it. Well, she could have had other reasons other than what she had in her mind on, you know, September 11th, 2007, than simply the issue of the pardon as a factor in the pardon request. Thank you, Your Honor. Thank you, Counselor. Ms. Doughty. May it please the Court, Irene Doughty, Assistant United States Attorney for the District of New Jersey, appearing on behalf of the respondent, Apple Lee, the warden of FCI Farrington. That was a month ago. You haven't even said anything yet.  I had to write it down, Your Honor. Just a factual question. Why were the federal officials present at Mr. Guy's state sentencing in September of 2007? No information on that, Your Honor. I understand that the transcript from the sentencing proceeding in state court on September 11th, 2007, indicates that federal agents, close quote, were present in the courtroom. Beyond that, there's no information. So we don't even know who they were? I'm sorry? We don't even know who they were? Not on the record, Your Honor. No information about that. Because I need to know their marshals, but I guess I just assumed that from their presence on October 11th of 2006. Well, that would be the working assumption, Your Honor. I'm not sure what was in the mind of Mr. Guy or counsel at the sentencing, but what should he have done if he perceived at that time that, in fact, he should be in federal custody? Other than a barden petition, which ultimately he did. Is there anything else he could have done? Could he have asked for a clarification from Judge Fitzgerald? I'm not sure, Your Honor. There's two parts of what Mr. Guy apparently had in his mind when he was working out the plea in the New York Supreme Court. He wanted to serve ten years total on his previously imposed federal sentence and on the state robbery charge that he was facing. As it turns out, that's what's going to happen. Yes, that's about right. There's a few little zigzags with that. But what he wanted was to serve ten years total. So you've got the ten years turns out to be that's the minimum that could be offered to him for the New York robbery charge. Maybe why he didn't earlier try to go to the BOP. I'm sorry? Maybe why he did not earlier try to go to the BOP. That may be. Did he lose the state of New York ten years? That's right. But he's also apparently from the comments of the ADA years later at the resentencing before Judge Fitzgerald in April of 2013, the ADA, O'Doherty, indicated on the record at that time, going back some seven years, indicated that she had been involved in the plea negotiations. She wasn't present for the guilty plea itself, nor was she present for the sentencing. Another ADA, ADA Rosen, I believe her name was, handled both of those proceedings. But ADA O'Doherty indicates here's what came up in the plea negotiations. He wanted to get ten years total. That was fine with her. And he wanted to have his ten years for the state sentence to run concurrent with the federal sentence. She said, I was fine with that. He also wanted to spend his time, according to her, according to his attorney, in federal prison. Fine with her, too. That may not be an exact statement. I guess he wanted to spend his time someplace else. But given the option between state and federal prison, I don't think he wanted to spend his time in federal prison. That's right. As between the two, he wanted to spend the first part of that ten years, the first 55 months or so, in a federal facility, and then presumably coming back to the state. I would disagree with any suggestion that the place of the confinement to serve his state sentence was a critical part of any plea agreement. That's not what Judge Fitzgerald seemed to be indicating. The promise he made was to give ten years and that that would be concurrent with the previously imposed federal sentence of 55 months. He can only do that if the federal sentence is imposed first. Isn't that the whole problem here? I'm sorry, Your Honor? He can only ensure that the state sentence runs concurrently if the federal sentence has already been imposed. And he didn't wait. He imposed his sentence first. And then he doesn't control what Judge Batts does. If Judge Batts wants to run her 55 months consecutively or partially consecutively, she can. Well, the federal sentence, of course, had been imposed first, but it hadn't commenced running. That's what I mean, yeah. That's right. Yes, it hadn't commenced running yet. So unless the federal sentence commences first, the state court judge can't control whether the federal sentence will be concurrent with the state. Do you concede, counsel, that the federal court had primary jurisdiction over Mr. Guy at the time Judge Batts imposed the sentence and released him on bond? He was never in – well, he had been released on bond continuously from the time of his arrest. That's right. But he was – the federal court had primary custody of him, right? He was never in custody for the – I should say primary jurisdiction. They had primary jurisdiction. Primary jurisdiction. And then is it your position they lost that primary jurisdiction when the state then took physical custody of the man? Judge Batts relinquished primary jurisdiction over Mr. Guy when he was released on bond. And that had been the situation ever since his federal arrest. Well, but they still had – the federal court had not only primary jurisdiction but exclusive jurisdiction over him, right? They could have rounded him up at any time for violating the conditions of bond. That's right, but once he – So when did they lose primary jurisdiction over him? Was it when he was arrested on the state charge and brought into state custody? They lose primary jurisdiction over him when he's actually arrested by the state. That's right. They had already relinquished primary jurisdiction over him by releasing him on bond at that point. Yes, they could have picked him up at any time at that point, but he was out on bond. And that's the – And Justice Fitzgerald could have released him back to the feds, I suppose, right? But he didn't do that. Okay. Justice – Judge Fitzgerald never intended – the ADA didn't intend – the state of New York didn't intend to suspend the immediate running of his state sentence. And that's going to cost him two extra years beyond the ten years. It's not an extra two years, Your Honor, and let me address that. Isn't seven years and 55 months close to two years? Or maybe I'm not doing the math. The earliest that he could have been released from his ten-year sentence was April 27, 2010. That's the earliest he could have been released. Now, when he makes his barter request to the BOP, please designate the state sentence, non-protonc, for service of my federal sentence. The BOP – well, let me just state in addition. Under the federal statute, 18 U.S.A. 3584, Judge Batt's federal sentence is going to be consecutive to the state sentence, unless she orders otherwise. Now, in this situation, the state judge has expressed an intent, a desire, that the state sentence run concurrent with the federal sentence. Mr. Guy makes his application to the BOP. Please do that. Please accomplish the concurrency by designating the state place of incarceration for service of the federal sentence. That would have the effect, then, of advancing the commencement date of the federal sentence. The BOP goes back to Judge Batt's and asks for the recommendation. The BOP, in their letter to Judge Batt's, advising the state specifically, if Mr. Guy has asked to have the state sentence run concurrent with the federal sentence, if we grant this request, the BOP will start the commencement date of his federal sentence at a time that will result in the immediate expiration of that federal sentence. Judge, what's your recommendation? Judge Batt's writes back in the most emphatic terms, the court does not approve. Now, it's not just a matter of the BOP. Maybe that's because she was upset that he screwed up when she let him out on bond. That seems to be their implicit argument is that things changed here, but what didn't change is Judge Batt's original order. Her original order was to take him into federal custody. Judge Batt's issued that order having understood, and it's in the body of the order itself, that the court has sentenced him on October the 6th. No, October 11th. October the 3rd, thank you, Your Honor. Or 11th, wasn't it? Was the sentence up on the 3rd, and then he committed the next crime on the 9th, the robbery? That's correct, Your Honor. Okay. It says they went back before Judge Batt's on the 11th. So it would be the 3rd, the 9th, and the 11th. I'm looking at page 52 of the joint appendix, Judge Batt's order of October 11th, 2007. Defendant was sentenced on 2006. 2006. Sorry? 2006. 2006, yes. Defendant was sentenced on October 3rd to a term of 55 months to voluntarily surrender January 12th, 2007. Whereas defendant was rearrested on October 9th in Manhattan, charged with robbery in the first degree, criminal possession of a weapon in the third degree, among other charges. Whereas the defendant is currently incarcerated at a facility on Rikers Island as a result of the arrest, but bail has been set. It's hereby ordered that the defendant's bail on the federal case is revoked, and the defendant is remanded to federal custody upon his release from Rikers Island. Judge Batt's is concerned that this defendant that she has permitted to remain out on bail and to voluntarily surrender in a few months' time, he's gone out and committed, well, he's been arrested on charges of armed robbery. And she's informed that bail's been set. She doesn't want him on the street. When she revoked bail, doesn't that start the federal sentence even though he's in state institution? She revokes federal bond while he's in state custody. Doesn't that start the running of the federal sentence? Absolutely not, Your Honor. All right. It would if he were taken into federal custody. He'd get credit for that. Well, if he had, in fact, made bond for Rikers Island and had been released on bond, then the marshals needed to go out and pick him up and bring him back into federal custody, and then Judge Batt's can make a determination about keeping him in. But that didn't happen, which is why you say the state exercised primary jurisdiction over him. That's exactly right. Are you saying we should just follow our NPO and Alan V. Nash, and do you think that that dictates the result here? I think that's correct, Your Honor. I mean, the facts there were even more equitably in favor of the prisoner in that case than here. That's correct. In both the Alan V. Nash case and in this one, you had a situation where the federal sentencing judge is asked by the Bureau of Prisons, in connection with a barter request, federal judge, what's your recommendation, what's your direction on whether the federal sentence should run, be calculated to run concurrent with the state? The federal judge says, no, I don't agree with that. I don't recommend that. The BOP very seldom, it's my understanding, very seldom makes a granting non-protectant designation, in absence of the federal sentencing judge's recommendation. But you would concede, wouldn't you, that there are some equities in Mr. Guy's favor. He's going to do a little more time than Justice Fitzgerald wanted him to do. He's going to do exactly what Judge Batts wants him to do. We know that, I think. But he's going to do, if Judge Batts had not only imposed her sentence, but if he had been actually taken into federal custody and had begun serving his federal sentence and then got caught up on a state charge and Justice Fitzgerald went after he was in federal custody, Justice Fitzgerald would have been able to dictate the extent of Mr. Guy's sentence. That's right. If that factual scenario had happened. The problem is that's a counterfactual. That's right. But it's not two years. How much is it then? Because I've had two years in my mind and I guess I didn't. That's right, and certainly that's what's been presented. The real difference, the additional period of time that Mr. Guy will be serving under the BOP's computation by starting his sentence on the date that he was actually released from his reduced sentence, the difference there is seven months. And the reason for that is that when he goes back to state court and he gets the sentence reduced to seven months, the earliest release date from that seven-year sentence is October 2nd or 3rd of 2012. He's actually released May 2nd of 2013. That's a difference of seven months. Now, that difference, he's serving exactly the amount of time that the state court intended. He's serving exactly the amount of time that the federal court intended. The seventh-month difference arises from the circumstance of the barden request, from the timing of the barden request. If that barden request had been made sometime earlier and had been denied, the same factual scenario just moved earlier chronologically. Well, but they're saying Justice Fitzgerald couldn't have gone below the seven years, though, under state law. Is that incorrect? I'm sorry? I think I heard counsel say that because I had asked this, if the barden request had been made earlier, he wouldn't have this problem. But I think their answer was that Justice Fitzgerald had to give him at least seven years under state law. That was the statutory minimum, so. Well, but by the time that the barden request was made, he'd already gone past the earliest release date from what turned out to be his reduced sentence. If he had made that barden request, say, a year earlier, if he'd made that barden request in January of 2012, if he'd made it in January of 2011 after he was told from the first proceeding in state court that this is what you have to do, you need to go to the federal authorities and ask for a non-proton designation or for designation of the state facility, and if that's granted, that will achieve concurrency, full concurrency between the two sentences. If Mr. Guy had made that barden request sometime in 2011, request is denied, he then goes back to state court, then gets the reduction of the sentence. He gets the reduction of the sentence to the seven years, but he still can't be released from that seven-year sentence until October the 3rd of 2012. So the difference between the, quote, additional time that he's serving, the circumstances of that under the Bureau's calculation of when the Bureau starts the commencement date of his federal sentence under the federal statute and consecutive per Judge Batt's clearly expressed intent, they could only have, if he had been released on October the 3rd of 2012, the earliest date that he could have been reduced from the seven-year sentence, that's a seven-month difference from when he actually was released. Thank you. Your Honor, I would just say the district court judge here correctly accepted, examined and accepted the Bureau's sentence computation. This Court should affirm. Thank you. Thank you. Mr. Kingsbury. A few corrections first. The government, in describing the state court's original sentencing intent, kept referring to a ten-year sentence. Under New York law, the original conditional release date that Mr. Guy would have had was April 27th, 2015. The maximum date was October 3rd, 2016. That's on page 78 of the Joint Appendix. That's the federal or the state? That's the state. Now, the government was describing the conditional release date and the maximum release date in April and October of 2012, respectively, based on April 2013 and October 2012, right? Yes, Your Honor. But based on Justice Fitzgerald's partial remedy that he granted later. So what the government's doing is saying that the harm needs to be calculated from the standpoint of what Justice Fitzgerald did to give Mr. Guy some relief. But what actually happened here is Mr. Guy would originally have been released if the federal agents had taken Mr. Guy into custody, as Judge Betz directed, and Justice Fitzgerald's sentencing intent was honored, he would have been released at the end of the day from Greenhaven April 27th, 2015. This issue, it's not about the DOP's calculations. What this comes down to is the marshal's denial of bringing Mr. Guy into custody. They failed to follow the order of the state judge. Exactly. You say it's not really the state judge. It's the prior order of the federal judge. That's right. And that order says take him into custody if he's released from Rikers Island. But he wasn't released from Rikers Island. Well, he was released. Well, he was never put into custody. To federal custody upon release from Rikers Island. Yes. So you're suggesting then what that order meant. I mean, you're taking what strikes me. Tell me why I'm wrong. You're taking an absurdly literal understanding of that order. What I hear you saying is the minute the state police or officials went to Rikers Island and put him in the car and started driving him to Justice Fitzgerald's courtroom, the marshal should have interrupted the car and grabbed him and said, He's been released from Rikers Island. He's ours. That would be an absurd reading. Okay. He's in the courtroom. He's in the courtroom and the state court says, Well, we're going to release him into your custody. We're going to put him into your custody. And the marshal will say, I don't know what he's talking about. I've never seen that happen. I don't take orders from a state judge. If the caller went back to their federal car and called maybe their chief and said, What do we do when a state judge tells us that he's paroled someone? So we can get a report. And that's exactly it. And then they probably said, Well, did the guy just walk? Did he stroll out of the courtroom? Because we know pretty clearly if he strolled out of the courtroom and started heading down the streets of Manhattan, then the marshals would have grabbed him pursuant to Judge Bass's order. Of course. If Justice Fitzgerald had granted $1 bail pending appeal,  That's why they were there. They were there to grab him. If the state kept custody of him and he didn't stroll out of that courtroom, then the marshals quite reasonably concluded that Judge Bass's order was not triggered. The state kept actual custody, but that's because the federal agents did not take him into their custody. Because there's no reason to. The state guys had him. Well, Judge Bass had ordered them to take him into custody. She had revoked his bail. Clearly, Justice Fitzgerald had wanted him to go into federal custody. Clearly, the DA had wanted him to go into federal custody. When you're focusing on the facts that existed at the relevant point in time, which is September 2007, all evidence suggests that both Judge Bass, Justice Fitzgerald, and the DA's office in Manhattan had wanted him to go into federal custody. And I need to add one point, which is that the federal government never violated Mr. Guy on the terms of his bail for committing the robbery. Essentially, what has happened here is the government is taking a position that, based on the circumstances that just happened to occur here, we can default into extra punishment for Mr. Guy based on his conduct. And that's impermissible, and that's why the district court should be reversed. Thank you. Thank you. Thank you, Chairman. I also want to thank you for taking the matter on pro bono. And when you get back to whoever the folks are in charge there, who are probably substantially above your pay grade and way above our pay grade, please give them the court's thanks. And above Ms. Dowdy's pay grade. Thank you. Do you have a pay grade even, Ms. Dowdy? Some days you probably wonder.